**Nos. 24-2210, 24-2211**

# United States Court of Appeals for the Third Circuit

IN RE:

WHITTAKER, CLARK & DANIELS, INC.,

*Debtor-Appellee*,

PETER PROTOPAPAS; OFFICIAL COMMITTEE OF TALC CLAIMANTS,

*Appellants*,

v.

WHITTAKER, CLARK & DANIELS, INC.,

*Appellee,*

On Appeal from the United States District Court for the District of New Jersey
Civil Action No. No. 23-4151 (Quraishi, J.)

## APPELLANTS' SECOND CONSOLIDATED SUPPLEMENTAL BRIEF

BRYAN KILLIAN
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
bryan.killian@morganlewis.com

ANDREW J. GALLO
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110

*Counsel for Appellant Peter Protopapas*

KATHLEEN R. HARTNETT
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
khartnett@cooley.com

MATTHEW KUTCHER
COOLEY LLP
110 North Wacker Drive, Suite 4200
Chicago, IL 60606
mkutcher@cooley.com

CULLEN D. SPECKHART
PATRICK J. HAYDEN
HUGH B. HAMILTON
JEREMIAH P. LEDWIDGE
COOLEY LLP
55 Hudson Yards
New York, NY 10001

*Counsel for Appellant the Official Committee
of Talc Claimants*

*(Additional Counsel Listed in Signature Block)*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................1

ARGUMENT .....................................................................................................2

I.    Although the Circuit Split Is Not Implicated Here, *Klaxon* Generally Governs Choice-of-Law Analyses in Bankruptcy Proceedings. ....................................................................................2

II.    Regardless of Which Choice-of-Law Rules Apply, the Bankruptcy Court Was Required to Give the Receivership Order Full Faith and Credit. ..........................................................5

III.    Regardless of Which Choice-of-Law Rules Apply, the Bankruptcy Court Erred by Treating All Successor-Liability Claims as Property of the Estate. .....................................................11

CONCLUSION ................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abeinsa Holding Inc.*,
  No. 20-3333, 2021 WL 3909984 (3d Cir. Sept. 1, 2021) ..................................3

*In re Audubon Quartet, Inc.*,
  275 B.R. 783 (Bankr. W.D. Va. 2002) ...........................................................5

*In re Autumn Press, Inc.*,
  20 B.R. 60 (Bankr. D. Mass. 1982) ................................................................5

*Baker by Thomas v. Gen. Motors Corp.*,
  522 U.S. 222 (1998) .........................................................................................7

*In re Brown*,
  951 F.2d 564 (3d Cir. 1991) ..........................................................................10

*Burks v. Lasker*,
  441 U.S. 471 (1979) .........................................................................................5

*Butner v. United States*,
  440 U.S. 48 (1979) .........................................................................................12

*Cavagnaro v. Indian Tire & Rubber Co.*,
  107 A. 643 (N.J. Ch. 1919) .............................................................................6

*Converse v. Hamilton*,
  224 U.S. 243 (1912) .........................................................................................9

*In re Emoral, Inc.*,
  740 F.3d 875 (3d Cir. 2014) ..........................................................................12

*Fagin v. Gilmartin*,
  432 F.3d 276 (3d Cir. 2005) ............................................................................6

*In re Franchise Servs. of N. Am., Inc.*,
  891 F.3d 198 (5th Cir. 2018) ...........................................................................5

*In re Gaston & Snow*,
  243 F.3d 599 (2d Cir. 2001) ........................................................................3, 4

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Henn*,
166 A. 138 (N.J. Ch. 1933)................................................................6

*Klaxon Co. v. Stentor Electric Manufacturing Co.*,
313 U.S. 487 (1941)...........................................................1, 2, 3, 11

*Kremer v. Chem. Const. Corp.*,
456 U.S. 461 (1982)..........................................................................7

*In re Lindsay*,
59 F.3d 942 (9th Cir. 1995) ..............................................................3

*Marshall v. Marshall*,
547 U.S. 293 (2006).........................................................................7

*In re Merritt Dredging Co., Inc.*,
839 F.2d 203 (4th Cir. 1988) .........................................................3, 4

*Milliken v. Meyer*,
311 U.S. 457 (1940)..........................................................................7

*Milwaukee Cnty. v. M.E. White Co.*,
296 U.S. 268 (1935).......................................................................11

*In re Payless Cashways*,
203 F.3d 1081 (8th Cir. 2000) .......................................................3, 4

*In re PHP Healthcare Corp.*,
128 F. App'x 839 (3d Cir. 2005) .......................................................4

*Price v. Gurney*,
324 U.S. 100 (1945).................................................................1, 5, 6

*State v. Bacote*,
503 S.E.2d 161 (S.C. 1998) ..............................................................8

*In re Sunrise Sec. Litig.*,
916 F.2d 874 (3d Cir. 1990) ..............................................................6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Tronox Inc.*,
    855 F.3d 84 (2d Cir. 2017) ...............................................................................12

*Wallace Lincoln-Mercury Co. v. Gentry*,
    469 F.2d 396 (5th Cir. 1972) ..............................................................................2

*In re Wilton Armetale, Inc.*,
    968 F.3d 273 (3d Cir. 2020) ..............................................................................12

**Constitutions**

U.S. Const. art. IV, § 1.................................................................................................1, 7

**Statutes**

28 U.S.C. § 1738.........................................................................................................1, 7

S.C. Code Ann. § 14-3-330(4) .......................................................................................10

**Other Authorities**

Restatement (Second) Judgments
    § 13.........................................................................................................................9
    § 27....................................................................................................................8, 9

## <u>INTRODUCTION</u>

This Court asked the parties to address whether *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941), governs choice-of-law analyses in bankruptcy cases. The circuits are divided on that question, and Appellants submit that the approach that best harmonizes the role of bankruptcy courts with the Supreme Court's guidance regarding both the treatment of property interests and the creation of federal common law is to apply the forum state's choice-of-law rule as a default, absent an overriding federal interest requiring application of a federal choice-of-law rule.

Yet, as to the precise state-law question presented here, there is no choice-of-law split. When considering who has authority to initiate a bankruptcy case under *Price v. Gurney*, 324 U.S. 100 (1945), courts uniformly apply the law of the state of incorporation, virtually never performing an explicit choice-of-law analysis. Here, both federal and New Jersey choice-of-law rules would select New Jersey law, and New Jersey law, in turn, would give the South Carolina Court's Receivership Order the full faith and credit it is owed. *See* U.S. Const. art. IV, § 1; 28 U.S.C. § 1738. Because the Receivership Order transferred to the Receiver the power to petition for bankruptcy, the Bankruptcy Court was required to give full effect to the Receivership Order. Thus, whether New Jersey or federal choice-of-law rules apply,

the result is the same:  this bankruptcy was not authorized because of the Receivership Order.

For purposes of the summary judgment appeal, the fact that any choice-of-law analysis points towards New Jersey law only underscores the importance of respecting New Jersey's product-line exception and excluding product-line and California law successor-liability claims from the estate.

This Court should reverse.

## **ARGUMENT**

**I.    Although the Circuit Split Is Not Implicated Here, *Klaxon* Generally Governs Choice-of-Law Analyses in Bankruptcy Proceedings.**

In *Klaxon*, the Supreme Court held that federal courts sitting in diversity must apply the choice-of-law rules of the forum state, not make "independent determinations" under federal law regarding which state law applies.  *See* 313 U.S. at 496.  The Court cited *Erie*'s requirement that substantive state law apply in diversity cases, which itself is based on "the principle of uniformity within a state"— that is, the same rule being applied by "coordinate state and federal courts."  *Id.* *Klaxon* considered concerns about the "lack of uniformity this may produce between federal courts in different states" to be secondary.  *Id.*

The circuits are split as to *Klaxon*'s application, if any, in bankruptcy proceedings.  The Fifth and Ninth Circuits have distinguished *Klaxon* and held that federal choice-of-law rules apply in bankruptcy.  *See Wallace Lincoln-Mercury Co.*

*v. Gentry*, 469 F.2d 396, 400 n.1 (5th Cir. 1972); *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995). The rationale of this approach is that, since bankruptcy courts exercise exclusive federal jurisdiction, "[t]he value of national uniformity of approach need not be subordinated . . . to differences in state choice of law rules." *Lindsay*, 59 F.3d at 948.

The Second, Fourth, and Eighth Circuits have determined that *Klaxon* does apply in bankruptcy cases and have applied the choice-of-law rules of the forum state. *See In re Gaston & Snow*, 243 F.3d 599, 601–02, 605–07 (2d Cir. 2001); *In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 205–06 (4th Cir. 1988); *In re Payless Cashways*, 203 F.3d 1081, 1084 (8th Cir. 2000). The rationales for this approach are that the "ability of the federal courts to create federal common law and displace state created rules is severely limited," and that "*Klaxon* rejected the need for uniformity as a justification for displacing state conflicts rules." *Gaston & Snow*, 243 F.3d at 606.

A recent unpublished decision of this Court stated that the standard applied by the Fourth and Second Circuits could be described "as a sort of compromise between" a pure *Klaxon* rule and a pure federal rule. *In re Abeinsa Holding Inc.*, No. 20-3333, 2021 WL 3909984, at *3 (3d Cir. Sept. 1, 2021). This was based on language in those Circuits' decisions limiting their holdings "to cases where no significant federal policy, calling for the imposition of a federal conflicts rule,

3

exists." *Gaston & Snow*, 243 F.3d at 607; *see Merritt Dredging*, 839 F.2d at 206 (explaining that "no overwhelming federal policy requires us to formulate a choice of law rule as a matter of independent federal judgment"); *see also In re PHP Healthcare Corp.*, 128 F. App'x 839, 843 (3d Cir. 2005) (unpublished) (applying forum state's choice-of-law rules because "there is no 'significant conflict between some federal policy or interest and the use of state law'" choice-of-law rules (citation omitted)).  Notably, however, the Eighth Circuit's decision in *Payless Cashways* did not *rule out* the use of federal choice-of-law rules where there is an overriding federal interest; it simply did not address that question—accordingly, the Eighth Circuit is fairly considered to align with the Second and Fourth Circuits in applying the forum state's choice-of-law rules.[1]

Appellants respectfully submit that applying the choice-of-law rules of the forum state as a default is the better approach for the reasons set forth in the Second and Fourth Circuit's decisions (the Eighth Circuit's decision does not provide reasoning on this point).

---

[1] The potential exception identified in these cases would be to apply *federal choice-of-law rules* to determine which *state's law* applies—not to apply substantive federal law.  Absent preemption, state law governs authority to file for bankruptcy, and as Appellants explained in their first supplemental brief, there is no basis for preemption or a federal public policy "override" here.

**II.    Regardless of Which Choice-of-Law Rules Apply, the Bankruptcy Court Was Required to Give the Receivership Order Full Faith and Credit.**

The split regarding which choice-of-law rules apply ***generally*** in bankruptcy is not implicated here for two related reasons. *First*, nearly all courts understand *Price* as requiring application of the law of the state of incorporation to determine authority, without regard to choice of law. *See Price*, 324 U.S. at 104 ("[R]espondents make no pretense of saying that they in fact have the power of management over this Ohio corporation or that . . . Ohio's General Corporation Act which vests the management of Ohio corporations in the board of directors is inapplicable here." (footnote omitted)); *see also In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 210 (5th Cir. 2018) ("To determine corporate authority to file for bankruptcy, we apply the law of the state of incorporation—here, Delaware." (citing *Price*)); *In re Audubon Quartet, Inc.*, 275 B.R. 783, 786 (Bankr. W.D. Va. 2002) ("[T]his court must look to the substantive law of the state of incorporation to evaluate the propriety of corporate action." (citing *Price*)).[2] *Second*, as to questions of the authority of a corporation's board of directors, both federal choice-of-law rules and New Jersey choice-of-law rules select New Jersey law as the law of the state of WCD's incorporation. *See Burks v. Lasker*, 441 U.S. 471, 477–78 (1979)

---

[2] Appellants are aware of only one case explicitly undertaking a choice-of-law analysis to decide whether a bankruptcy filing was authorized. *See In re Autumn Press, Inc.*, 20 B.R. 60, 61 (Bankr. D. Mass. 1982).

(holding that, to "determine the powers of corporate directors," federal law directs federal courts to look at "the relevant State's corporation law"); *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005) ("Under New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs."). Thus, whether under *Price*, federal choice-of-law rules, or New Jersey choice-of-law rules, the question of whether WCD's board of directors had authority to petition for bankruptcy is determined by the law of New Jersey.

Importantly—and dispositive of the motion to dismiss in this case—New Jersey would *not* ignore the Receivership Order, just as the Bankruptcy Court could not ignore it. New Jersey has long recognized that orders appointing a receiver can strip a corporate board of directors of its authority to petition for bankruptcy and take other litigation actions on behalf the corporation. *See, e.g.*, *Cavagnaro v. Indian Tire & Rubber Co.*, 107 A. 643, 644 (N.J. Ch. 1919); *In re Henn*, 166 A. 138, 139 (N.J. Ch. 1933) ("If the officers of this corporation after the appointment of the receiver desired to file petition in bankruptcy, the proper course for them to pursue would have been to apply to this court for permission to file such petition, and for leave to permit the officers to act."). So has this Court. *See In re Sunrise Sec. Litig.*, 916 F.2d 874, 879 n.5 (3d Cir. 1990) (recognizing that a receiver appointed over a corporation, "not the directors," decides whether to support or oppose derivative actions under Fed. R. Civ. P. 23.1).

6

It makes no difference that the Receivership Order was issued by a South Carolina court, rather than a New Jersey court. The Full Faith and Credit Clause, U.S. Const. art. IV, § 1, together with the related Full Faith and Credit Act, 28 U.S.C. § 1738, require state and federal courts "to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982). Thus, a preclusive judicial decree trumps and obviates the need for a choice-of-law analysis and an independent determination of the underlying question. *See Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232–33 (1998) (recognizing that the credit owed to other states' laws is weaker than the credit owed to other states' judgments: "Regarding judgments . . . the full faith and credit obligation is exacting.").

Full faith and credit "precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." *Milliken v. Meyer*, 311 U.S. 457, 462 (1940). This principle extends to jurisdiction: when the parties litigate the jurisdiction of the rendering court, the court's resolution of the jurisdictional dispute is conclusive and precludes another court from second-guessing the rendering court's jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 314 (2006) ("[A] state court's final judgment determining *its own* jurisdiction ordinarily qualifies for full faith and credit, so long

as the jurisdictional issue was fully and fairly litigated in the court that rendered the judgment.").

Here, the Bankruptcy Court was required to give the Receivership Order full faith and credit because that order would be given preclusive effect in South Carolina (*i.e.*, the state that issued it).[3]  South Carolina follows the Restatement approach to issue preclusion, *see State v. Bacote*, 503 S.E.2d 161, 162 (S.C. 1998), which provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim," Restatement (Second) of Judgments § 27.  All of these requirements are met here.  The record makes clear that the propriety of the receivership was actually litigated and determined by the South Carolina Court.  *See* JA213–17.  The receivership was also the subject of WCD's motion for reconsideration and extensive argument during the Reconsideration Hearing, the record of which makes clear that Justice Toal's determination was essential to her order denying reconsideration.  *See generally* JA417–27.  The Receivership Order thus has preclusive effect, regardless of which choice-of-law rules apply and which state's law would otherwise apply.

---

[3] Appellants made this argument in both the bankruptcy court and the district court. *See* JA761–62; Case No. 23-cv-4151, ECF No. 18 at 49–51 (ECF pagination).

WCD has disputed the South Carolina Court's jurisdiction to enter the Receivership Order and the finality of that order. *See* JA684–87. But WCD raised the same objection in state court, and the South Carolina Court ruled on the record that it *did* have jurisdiction over WCD's property, making that determination conclusive. *See* JA425 ("I am satisfied now that there are sufficient connections with South Carolina of the Whittaker Clark & Daniels assets . . . to justify the receivership."). Any objection to that ruling should have been raised on appeal, but WCD declined to pursue appeal and purported to file for bankruptcy instead.

As to finality, receivership orders carry preclusive effect and are afforded full faith and credit despite their interlocutory nature. The Supreme Court has recognized as much. *See, e.g.*, *Converse v. Hamilton*, 224 U.S. 243, 256 (1912). As the Restatement explains, "a litigation may have reached a stage at which issue preclusion is appropriate even though claim preclusion—application of the rules of merger and bar—is not." Restatement (Second) of Judgments § 27 cmt. k (citing *id.* § 13). Section 13, in turn, provides: "[F]or purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Id.* § 13. Applying this section of the Restatement, this Court has recognized that some interlocutory orders may be given preclusive effect in bankruptcy proceedings, explaining that "[f]inality for purposes of issue preclusion

9

is a more 'pliant' concept than it would be in other contexts," and "[f]inality 'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (citation omitted) (holding that bankruptcy court was required to give state court's grant of summary judgment preclusive effect).

The Receivership Order here is final under this standard. WCD was fully heard in its reconsideration briefing and during oral argument at the Reconsideration Hearing, and the South Carolina Court denied that motion and explained its reasoning on the record. *See* JA417–27. A written decision would have followed had WCD filed objections to the proposed reconsideration order as the Court directed, rather than purport to file for bankruptcy, resulting in a stay of the South Carolina case. *See* JA425 (directing WCD to submit any "amendments" to Plaintiffs' proposed order by the following Thursday). Moreover, the South Carolina Court's appointment of the Receiver was immediately appealable under South Carolina law. *See* S.C. Code Ann. § 14-3-330(4).

The potential availability of an ancillary receivership in New Jersey—which, as Appellants have explained, is inapt and not required, including because nearly all of WCD's intangible assets were within South Carolina under South Carolina law, *see* Reply Br. 17–19—provides no basis for New Jersey courts or the Bankruptcy

10

Court to withhold full faith and credit. *See Milwaukee Cnty. v. M.E. White Co.*, 296 U.S. 268, 277 (1935) (noting that "credit must be given to the judgment of another state, although the forum would not be required to entertain the suit on which the judgment was founded"). *First,* the need for an ancillary receivership presupposes that there is tangible property exclusively situated in New Jersey—a proposition the South Carolina Court rejected. *Second*, New Jersey courts would be just as bound to respect the Receivership Order as the Bankruptcy Court, as state courts must give full faith and credit to orders appointing receivers.

Accordingly, the Full Faith and Credit Clause and statute required the Bankruptcy Court to give effect to the Receivership Order and to respect the powers that order vested in the Receiver. Choice-of-law rules do not alter that conclusion. The only question is whether the Receivership Order gave the Receiver authority to file for bankruptcy. If the Receivership Order did, this Court must reverse the decision on the motion to dismiss. If the Receivership Order did not, this Court should affirm the denial of the motion to dismiss for that reason.

III. **Regardless of Which Choice-of-Law Rules Apply, the Bankruptcy Court Erred by Treating All Successor-Liability Claims as Property of the Estate.**

With respect to the summary judgment appeal, *Klaxon* does not affect the underlying question of whether the tort creditors' product-line claims or California successor-liability claims against third parties should be treated as property of the

11

estate. Regardless of what choice-of-law rules apply, a cause of action can be treated as property of the estate ***only if*** "the debtor could have asserted the claim on his own behalf under [the applicable] state law." *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014); *accord In re Wilton Armetale, Inc.*, 968 F.3d 273, 280 (3d Cir. 2020). This requirement derives not only from this Court's precedent, but also from the Supreme Court's guidance that property interests are "created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979).

WCD does not dispute that tort creditors have product-line claims against third-party Brenntag under New Jersey and California law, as well as successor-liability claims under California law that California does not allow a debtor to maintain absent injury to itself.[4] Indeed, the debtor in *Emoral* repeatedly emphasized to this Court that "[n]othing in federal bankruptcy law prevents [tort creditors] from pursuing an individualized successor-liability claim, like a 'product-line' exception claim (a distinct type of successor-liability claim under New Jersey law that *only* personal injury plaintiffs can pursue)." Letter to Clerk at 2, *In re Emoral Inc.*, No. 13-1467 (3d Cir. Oct. 15, 2013), Doc. 003111420831. To include product-line claims in the estate would be an affront to New Jersey law, which

---

[4] While these claims are indirect, in that they "run through" the Debtors, they are not derivative: a derivative claim requires injury to the debtor (from which the creditor's injury "derives"). *See, e.g., In re Tronox Inc.*, 855 F.3d 84, 100 (2d Cir. 2017). Indirect claims are a broader category, which requires the *Emoral* analysis to determine whether they are property of the estate.

contemplates such claims being brought by those injured by defective product lines—not debtors.

## CONCLUSION

For the foregoing reasons, this Court should reverse.

Dated: April 16, 2025                    *Kathleen R. Hartnett*

KATHLEEN R. HARTNETT
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
khartnett@cooley.com

MATTHEW KUTCHER
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606
(312) 881-6500
mkutcher@cooley.com

CULLEN D. SPECKHART
PATRICK J. HAYDEN
HUGH B. HAMILTON
JEREMIAH P. LEDWIDGE
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000

BENJAMIN B. SWEENEY
COOLEY LLP
1700 Seventh Avenue
Suite 1900
Seattle, WA 98101
(206) 452-8700

13

ARTHUR J. ABRAMOWITZ
ROSS J. SWITKES
SHERMAN, SILVERSTEIN, KOHL, ROSE
& PODOLSKY, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
(856) 662-0700

KEVIN C. MACLAY
TODD E. PHILLIPS
SERAFINA A. CONCANNON
CAPLIN & DRYSDALE, CHARTERED
1200 New Hampshire Avenue NW
8th Floor
Washington, DC 20036
(202) 862-7850

*Counsel for Appellant the
Official Committee of Talc Claimants*

*Bryan Killian*
BRYAN KILLIAN
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave. NW
Washington, DC 20004
(202) 739-3000
bryan.killian@morganlewis.com

ANDREW J. GALLO
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
(617) 951-8117

*Counsel for Appellant Peter Protopapas*

14

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g) and Local Rule 31.1, I certify the following:

1.      This brief complies with the type-volume limits of this Court's Order because it contains 2,995 words, excluding those parts exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word 2010.

3.      This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of the electronic brief is identical to the text of the paper copies and because Webroot Endpoint Protection v. 9.0.31.86 was run on the file containing the electronic version of the brief and no viruses were detected.

Dated: April 16, 2025                    _*Kathleen R. Hartnett*_____

KATHLEEN R. HARTNETT
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
khartnett@cooley.com

*Counsel for Appellant the*
*Official Committee of Talc Claimants*

15

## **CERTIFICATE OF SERVICE**

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on April 16, 2025.  All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

Dated: April 16, 2025          *Kathleen R. Hartnett*

KATHLEEN R. HARTNETT
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
khartnett@cooley.com

*Counsel for Appellant the*
*Official Committee of Talc Claimants*