Clement & Murphy
PLLC

April 23, 2025

**VIA CM/ECF**

Patricia S. Dodszuweit
Office of the Clerk
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

      Re:     *In re Whittaker, Clark & Daniels, Inc.*, Nos. 24-2210, 24-2211, 25-1044

Dear Ms. Dodszuweit:

On April 16, 2025, the Official Committee of Talc Claimants filed a letter in the above-captioned cases taking issue with two statements made by the Debtors at oral argument. Nothing in the Committee's letter makes any substantive difference or should in any way impact the Court's resolution of this appeal.

First, the Committee takes issue with the Debtors' statement that Brenntag's willingness to kick in over a half a billion dollars as part of the settlement underscored that settlement of *all* the successor liability claims, including product-line claims, created real value for the estate that would not exist unless those on the hook for successor, alter-ego, or veil-piercing liability could "buy peace" for *all* such claims. Tr.56. The Committee points out that under the proposed settlement, it is National Indemnity Company ("NICO"), not Brenntag, that is the source of funding for the $535 million to resolve the estates' successor liability claims (including the claims against Brenntag). Dkt.63 at 1-2. That is a distinction without a difference given that NICO, not Brenntag, is the ultimate party on the hook for successor liability claims against Brenntag, given the indemnification obligations of NICO to Stinnes and of Stinnes to Brenntag.[1] The substantive point remains that the party ultimately responsible for paying successor claims would not have been willing to contribute half a billion dollars to the estate for the benefit of all creditors in exchange for a settlement that bought only partial peace and left a substantial subset of successor liability claims unresolved.

Second, the Committee's complaint about the Debtors' statement that excluding product-line claims from the property of the estate would allow creditors with those claims to "jump the line in front of everybody else," Tr.55, is, if anything, even more pedantic and unpersuasive. As the Debtors explained, it is undisputed that under *Emoral*, "the vast

---

[1] Stinnes agreed to indemnify Brenntag for asbestos-related successor liability claims arising out of the 2004 asset sale, and NICO agreed to indemnify Stinnes for those obligations in 2007. *See* Dkt.30 at 9 (No. 25-1044).

April 23, 2025
Page 2 of 3

majority of successor claims and all of the alter ego and all of the veil piercing claims against Brenntag, all of those are property of the estate." Tr.54-55. But under the Committee's view, product-line claims "somehow fall out and are treated differently," such that product-line creditors can bring their claims directly against Brenntag rather than having them administered as property of the estate. Tr.55. As the Debtors explained, that position would allow those favored creditors to "jump the line in front of everybody else" by seeking recovery separately from Brenntag (ultimately indemnified by NICO), rather than sharing in the recovery that all other creditors would receive from the estates. Tr.55; *see* Tr.55-58. The point was never that those with product-line claims would receive a higher priority *in bankruptcy*, something the Code would not allow. The point was always that allowing those with product-line successor claims to pursue and obtain recovery outside of bankruptcy, while other similarly situated creditors must pursue recovery against the Debtors through the chapter 11 claims administration process, would allow those with product-line claims to, in fact, "jump the line." Tr.54-55. That point is hardly novel. *See In re Tronox Inc.*, 855 F.3d 84, 106 (2d Cir. 2017) ("The whole point of channeling claims through bankruptcy is to avoid creditors getting ahead of others in line of preference and to promote an equitable distribution of debtor assets."). And in the absence of the settlement, exempting product-line claims would affect other creditors because Brenntag is entitled to indemnity from Whittaker, effectively forcing those other creditors to pay in part for any successful product-line claims against Brenntag. The Debtors' statement therefore was and is entirely accurate and provides a powerful reason to treat product-line successor claims like all other successor and alter-ego claims.

Finally, the Debtors note that the Committee's second supplemental brief, filed on April 16, 2025, devotes over half its 12 pages to an argument that is both forfeited and well outside this Court's supplemental briefing order—namely, that the bankruptcy court "was required to give the receivership order full faith and credit." Dkt.62 at 5-11 (capitalization altered). That is an argument that the Committee never raised anywhere in its opening or reply brief, neither of which mentions the phrase "full faith and credit" even once. *See* Dkt.26, Dkt.38 (No. 24-2210). The argument is accordingly forfeited. *See, e.g.*, *United States v. Quillen*, 335 F.3d 219, 224 (3d Cir. 2003) ("[A]rguments not raised in an appellant's opening brief are deemed waived."). It is also far beyond the scope of this Court's supplemental briefing order, which directed the parties to submit supplemental briefing on "whether Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941), governs choice-of-law analyses in bankruptcy cases," Dkt.59—not whether the receivership order was entitled to full faith and credit. The Debtors will therefore refrain from responding to the Committee's forfeited (and meritless) full-faith-and-credit argument. If the Court wishes, however, to consider that argument, the Debtors would request an opportunity to respond.

April 23, 2025
Page 3 of 3

Respectfully,

s/Paul D. Clement
Paul D. Clement

*Counsel for Debtors-Appellees*

Cc:  All Counsel of Record